# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

Bryan Donald Haynes,

                Plaintiff,

                         Case No. 1:21-cv-5246-MLB

v.

Reddy Ice, LLC,

                Defendant.

_____/

## **OPINION & ORDER**

Plaintiff Bryan Donald Haynes worked for Defendant Reddy Ice, LLC, before the company fired him in January 2020. Plaintiff sued Defendant, claiming it violated the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964, and the Age Discrimination in Employment Act ("ADEA"). (Dkt. 14.) Defendant moved for summary judgment. (Dkt. 36.) Magistrate Judge Justin S. Anand issued a Final Report and Recommendation, saying the Court should grant in part and deny in part Defendant's motion. (Dkt. 46.) Defendant filed objections; Plaintiff did not. (Dkt. 48.) The Court adopts the Magistrate Judge's recommendation.

## I.   Background[1]

Plaintiff has been diagnosed with "moderately severe" hearing loss in his right ear.   (Dkt. 41-1 ¶ 3; Dkt. 38 at 94.)[2]   In August 2014, Defendant—a leader in ice production and distribution—hired Plaintiff to work as a Maintenance Technician at its facility in Nashville, Tennessee.   (Dkt. 36-6 ¶¶ 1–2.)   Plaintiff disclosed his hearing problem on his job application and in his initial interview.   (Dkt. 41-1 ¶¶ 4–5; Dkt. 38 at 29, 39–40.)   He explained he "would need an accommodation that, because of the noise and the plant levels, anything having to do with regulatory compliance, quotes, anything of major importance, be put in email or writing."   (Dkt. 38 at 29.)   Defendant ordered him to take a hearing test (as it does for every employee), and said, "there'd be no problem with [his request for written information] as the systems [it] generally operate[s] under are all written anyways."   (*Id.*; Dkt. 44 ¶ 6.)

---

[1] The Court provides some background of the facts as necessary to Defendant's objections but incorporates by reference the facts as outlined by the Magistrate Judge.

[2] Docket No. 38 is Plaintiff's deposition transcript.   Because of formatting, the transcript's pagination is different from that of the CM/ECF system. For ease of reference, when citing the transcript, the Court references the page of the transcript rather than the CM/ECF header.

In May 2019, Defendant made Plaintiff a Manufacturing, Processing & Vault ("MP&V") Manager, requiring him to move to East Point, Georgia. (Dkt. 36-6 ¶ 4.) As the MP&V Manager, Plaintiff was responsible for managing capital projects, acting with flexibility in non-routine situations, ensuring his team met production goals, and collaborating with Plant Manager Eddie Shelton. (*Id.* ¶¶ 9–10.) Plaintiff reported to Shelton, and Shelton reported to Daniel Koah, the Market Manager for Atlanta. (*Id.* ¶¶ 5, 7.) Michael Forgen, Defendant's Regional Operations Manager, was assigned to Defendant's Maryland location but also assisted at the East Point location. (*Id.* ¶ 6.)

Defendant contends that, shortly after Plaintiff moved into this new position, "it became clear to Koah that Plaintiff struggled" and that the "job was too big" for him because it required Plaintiff to manage a ten-person team of mechanics and operators. (*Id.* ¶ 11.)[3] By July 2019, Shelton and Koah began discussing Plaintiff's difficulties. (*Id.* ¶ 13.)

---

[3] Plaintiff objects to this fact and many others on the ground "Defendant[] [has] simply stated the issue or legal conclusion, and this paragraph should not be considered under the Local Rule[s]. . . ." (*See, e.g.*, Dkt. 42 ¶ 11.) But Defendant's asserted fact here (and elsewhere) is not a legal conclusion. So the Court deems this fact—and others like it—admitted. LR 56.1B(2)(a)(2), NDGa.

Shelton began having informal conversations with Plaintiff about his management style, including how he spoke to colleagues and balanced job duties.  (*Id.* ¶¶ 15–16.)

Plaintiff testified he told Shelton, Koah, Forgen, and others that he was disabled and needed an accommodation.  (Dkt. 38 at 96–98.)[4]  He further testified that, up until December 5, 2019, "most" of Defendant's employees did what was asked.  (*Id.* at 100.)  But after that, upper management did not follow his request for a reasonable accommodation at least eight times.  (*Id.* at 45.)

In December 2019, Defendant began a capital project that involved the installation of multiple air compressors and the replacement of gas lines.  (Dkt. 36-6 ¶ 27.)  On December 5, 2019, Forgen and Shelton spoke with Plaintiff about scheduling options for the project.  (*Id.* ¶ 20.)  At some point during the conversation, Plaintiff "held both his hands up to [Shelton] and . . . 'began yelling stop just stop,' shouted 'I cannot work like this,' and proceeded to storm out of the meeting after screaming 'send

---

[4] Defendant disputes this, insisting neither Forgen nor Koah knew about Plaintiff's alleged disability.  (Dkt. 36-6 ¶¶ 48–49.)  Still, Plaintiff testified he told them.  (Dkt. 38 at 96–98.)

me an email.'" (*Id.*)   Plaintiff admits "things got hostile" during this December 5, 2019 meeting and that he "can get agitated and emotional." (*Id.* ¶ 22.)  But he contends he asked them to send him an email because his hearing problems prevented him from fully understanding the conversation.  (Dkt. 42 ¶ 20; Dkt. 38 at 29, 47.)[5]  Plaintiff also testified he asked Shelton and Forgen to email him because he wished to respond "to the both of them stating [his] position[,] and [Plaintiff] [then] would've went to two other authorities higher than [Forgen and Shelton]" regarding the matter.  (Dkt. 36-6 ¶ 42.)  Plaintiff testified that the Reddy Ice plant was too loud to hold a normal conversation, all employees wore hearing protection, and "everything" was written down.  (*Id.* ¶ 43.)

Defendant contends the "final straw" leading to Plaintiff's termination involved Plaintiff's "blatant disregard" for Shelton's instructions regarding the December 2019 capital project.  (*Id.* ¶ 24.) Defendant contends the instructions included how Shelton expected the project to be completed, the expected completion date, and that outside contractors had to complete the project without using any of Defendant's

---

[5] Defendant disputes Plaintiff's statement about why he requested an email.  The Court discusses that below, but this is Plaintiff's claim.

employees. (*Id*. ¶ 25.) Defendant's practice was to avoid assigning its employees to work on capital projects because Defendant did not have the "required certified staff" necessary for the job and did not want to divert workers from their daily operations. (*Id*. ¶ 28.) Plaintiff admits he understood employees were not to perform compressor change outs. (Dkt. 41-1 ¶ 17.) He also testified that he understood employees were not to weld. (Dkt. 38 at 162:22–24, 166:24–167:1.) Plaintiff denies hearing anything about Shelton's other instructions, apparently including the requirement that company employees could not be involved in the capital project at all. (Dkt. 42 ¶¶ 24–26.)

Defendant contends that, despite the "explicit instructions" Shelton provided to him, Plaintiff unilaterally decided to do things differently. (Dkt. 36-6 ¶ 26.) Strangely, Defendant is vague about how Plaintiff allegedly violated the rules. (Dkt. 36-6 ¶¶ 26–29 (talking about Plaintiff's failure to follow instructions but not explaining what Plaintiff allegedly did or failed to do).) When Defendant confronted Plaintiff about not following Shelton's instructions regarding the December 2019 capital project, Plaintiff responded by stating that "he had been doing this for 40 years and this is how compressor work is done." (*Id*. ¶ 29.) Plaintiff

says, "he never heard anything about what they wanted to do or did not want to do" because he did not receive an email with Shelton's instructions as he requested.  (Dkt. 41-1 ¶ 12; Dkt. 38 at 47:10–48:19.)

On December 20, 2019, Koah emailed Chloe Price (Defendant's Regional Human Resources Manager) saying he wanted to terminate Plaintiff's employment due to "insubordination."  (Dkt. 36-6 ¶ 30.)  Koah explained Plaintiff failed to follow instructions on the capital project and was "very argumentative even with his direct manager and [did] not project the correct attitude to his team."  (*Id.* ¶ 31.)

Shelton emailed Koah saying he agreed Defendant needed to fire Plaintiff.  (*Id.* ¶ 33.)  Koah emailed Price that same day, saying the capital project "failed because [Plaintiff] deliberately did not follow [Shelton]'s instructions."  (*Id.* ¶ 34.)  Defendant fired Plaintiff for poor work performance on January 10, 2020.  (*Id.* ¶ 36.)  Defendant says that, during this meeting, Plaintiff "loudly professed" that he had been "doing this [type of work] forever and could read [them] the regulation that states we don't need a certified welder on this pipe."  (*Id.* ¶ 37.)  Plaintiff, on the other hand, contends he was fired based on miscommunication because management was "requesting things to be done in an

environment where [he] couldn't hear." (Dkt. 41-1 ¶ 18; Dkt. 38 at 102.) Plaintiff believes management objected to the way he put his foot down and requested an accommodation in writing. (Dkt. 41-1 ¶ 19.) Plaintiff testified that, several times, Forgen made comments like, "I don't give a damn about your hearing" or "[w]hat, you didn't hear me."[6] (*Id.* ¶ 20.)

In December 2021, Plaintiff sued Defendant, claiming disability discrimination under the ADA (Count I), hostile work environment under Title VII (Count II), retaliation under the ADA (Count III), and age discrimination under the ADEA (Count IV). (Dkt. 14.)[7] Defendant now moves for summary judgment. (Dkt. 36.)

---

[6] Forgen was not involved in Plaintiff's termination. (Dkt. 36-6 ¶ 38.)

[7] The Magistrate Judge construed Count I as raising both a disparate treatment and failure-to-accommodate claim. In a footnote, Defendant implies that was a mistake because Plaintiff made no attempt to establish either claim and rather confused the prima facie case for disparate treatment with failure to accommodate. (Dkt. 48 at 7 n.2.) Since Defendant did not adequately address the issue, the Court need not consider it. *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1209 n.5 (11th Cir. 2019) ("We do not ordinarily consider arguments raised in passing in one footnote rather than the body of the brief."). The Court construes Count I as the Magistrate Judge did.

## II.    Legal Standard

### A.    Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing a court, by reference to materials in the record, that there is no genuine dispute as to any material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). The nonmoving party then has the burden of showing summary judgment is improper by coming forward with "specific facts" demonstrating a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Salinero v. Johnson & Johnson*, 995 F.3d 959, 964 (11th Cir. 2021).

### B.    Review of the Magistrate Judge's Recommendation

28 U.S.C. § 636(b)(1) requires district courts to "make a de novo determination of those portions of [a recommendation] to which objection is made." Any such objection "must specifically identify the portions of

the [a recommendation] to which objection is made and the specific basis for objection." *McCullars v. Comm'r, Soc. Sec. Admin.*, 825 F. App'x 685, 694 (11th Cir. 2020);[8] *see United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009) ("[A] party that wishes to preserve its objection must clearly advise the district court and pinpoint the specific findings that the party disagrees with."). "Frivolous, conclusive, or general objections need not be considered by the district court." *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988).

"It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). "But many district courts still do conduct a limited review of unobjected-to portions of [a recommendation], typically for clear error. *See* Fed. R. Civ. P. 72(b) advisory committee's note (1983 Addition) ("When no timely objection is

---

[8] The Court recognizes *McCullars* is unpublished and not binding. The Court cites it nevertheless as instructive. *See Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 n.5 (11th Cir. 2018) ("Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive."). The same is true for other unpublished opinions the Court relies on in reaching its decision.

filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). Ultimately, whether objections are filed, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## III. Discussion

Plaintiff raises five claims: (1) Defendant failed to reasonably accommodate his disability under the ADA; (2) Defendant discriminated against him by firing him because of his disability under the ADA; (3) Defendant subjected him to a hostile work environment under Title VII; (4) Defendant retaliated against him under the ADA; and (5) Defendant discriminated against him because of his age under the ADEA. (Dkt. 14.) Defendant contends all those claims fail as a matter of law. (Dkt. 36.) The Magistrate Judge concluded Plaintiff's failure to accommodate and disparate treatment claims survive, but the remaining claims fail. (Dkt. 46.)

### A.   Failure to Accommodate

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to . . .

discharge of employees . . . and other terms, conditions, and privileges of employment."   42 U.S.C. § 12112(a).   "Under the ADA unlawful discrimination includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability' unless doing so 'would impose an undue hardship' on the employer." *Beasley v. O'Reilly Auto Parts*, 69 F.4th 744, 754 (11th Cir. 2023) (quoting 42 U.S.C. § 12112(b)(5)(A)).   A plaintiff can establish a prima facie claim under the ADA by showing that: "(1) he is disabled; (2) he was a 'qualified individual' at the relevant time, meaning he could perform the essential functions of the job in question with or without reasonable accommodations; and (3) he was discriminated against because of his disability," i.e., his employer failed to reasonably accommodate him. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001).   Of course, a plaintiff must also present evidence establishing that his employer had actual knowledge of his or her alleged disability or regarded him or her as disabled. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1186 (11th Cir. 2005).   "[D]iscrimination in the form of a failure to reasonably accommodate is actionable under the ADA only if that failure negatively impacts the employee's hiring, advancement,

discharge, compensation, training, and other terms, conditions, and privileges of [the plaintiff's] employment." *Beasley*, 69 F.4th at 754.

An accommodation is reasonable "only if it enables the employee to perform the essential functions of the job." *Lucas*, 257 F.3d at 1255. An employee bears the burden of identifying an accommodation that would allow him to perform the essential functions of his job. *Id.* at 1255–56. Because "an employer's failure to reasonably accommodate a disabled individual *itself* constitutes discrimination," the "*McDonnell Douglas* burden-shifting [framework] is not applicable to reasonable accommodation cases." *Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1262 (11th Cir. 2007) (emphasis in original); *Nadler v. Harvey*, 2007 WL 2404705, at *9 (11th Cir. Aug. 24, 2007) (emphasis in original).

Before the Magistrate Judge, Defendant argued Plaintiff failed to establish both that he has an ADA-qualifying disability and that he requested, and Defendant failed to provide, a reasonable accommodation. (Dkt. 36-1 at 12–19.) The Magistrate Judge found Plaintiff presented sufficient evidence to create a genuine issue of fact as to both issues. (Dkt. 46 at 36, 41, 48.) Defendant objects to the latter conclusion, saying the Magistrate Judge erred in determining Plaintiff presented evidence

that Defendant knowingly failed to provide a reasonable, requested accommodation.  (Dkt. 48 at 20–24.)

In reaching its conclusion on this issue, the Magistrate Judge relied on the following evidence: (1) the plant was too loud for normal conversations, (2) Plaintiff repeatedly requested that Defendant provide him all important communications in an email because of his hearing problems; (3) while most employees did this, upper management refused his request eight times between December 5, 2019; (4) when Plaintiff met with Shelton and Forgen about the capital project, he asked them to send him details of the meeting via email; (5) neither Shelton nor Forgen did so; (6) "Plaintiff never heard the plans of what they wanted to do or didn't want to do [with the capital project] because they weren't communicated to him in an email"; and (7) Koah twice emailed Price, stating Defendant needed to fire Plaintiff for "insubordination" and because Plaintiff had not followed instructions for the capital project.  (Dkt. 46 at 45–47.)  The Magistrate Judge concluded that "viewing the disputed facts and evidence in the light most favorable to Plaintiff, the Court must credit Plaintiff's testimony that he never received the email that he requested

and that lack of an email impaired his ability to follow these essential directions." (*Id.* at 49–50.)

Defendant first contends the Magistrate Judge over-credited Plaintiff's testimony that Defendant denied his request for a reasonable accommodation eight times because Plaintiff was only able to specifically identify one incident—the December 5 meeting. (Dkt. 48 at 21.) Plaintiff, however, testified Defendant denied his request for an email accommodation at least eight times. (Dkt. 38 at 46:7–14.) The Court does not make credibility determinations or weigh evidence at summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]"). Even if it did, this one instance would be enough for Plaintiff to avoid summary judgment given Defendant's admission that it terminated Plaintiff for allegedly failing to follow the instructions Plaintiff claims he requested during the December 5 meeting.

Defendant next argues Plaintiff's request for an email during the December 5, 2019 meeting did not place Defendant on notice of his need for a reasonable accommodation to perform his essential job functions.

15

(Dkt. 48 at 21–22.)  The Court disagrees.  Plaintiff testified he informed Defendant about his hearing problems during the interview process and explained he would need Defendant to provide any important instructions in writing.  (Dkt. 38 at 29:13–18.)  Plaintiff said Defendant asked if he would have a hearing test, he agreed, and Defendant said, "there'd be no problem with that, as the systems we generally operate under are all written anyways." (*Id.* at 29:18–21.)  Plaintiff testified he told many people who worked for Defendant—including Shelton and Forgen—he believed he was disabled and needed an accommodation.  (*Id.* at 96:20–25, 98:10–15.)  And up until December 5, 2019, "most Reddy Ice employees did what was asked." (*Id.* at 100:14–16.)  The record evidence, viewed in the light most favorable to Plaintiff, indicates Defendant was on notice of Plaintiff's requested accommodation to receive important communications in writing.  *See Frazier-White v. Gee*, 818 F.3d 1249, 1256 (11th Cir. 2016) ("[g]enerously construing" the plaintiff's prior communications with the defendant and statements during a due process hearing as proposing a specific accommodation).

Finally, Defendant contends the Magistrate Judge ignored that the email Plaintiff requested had nothing to do with the grounds for his

termination.  Defendant testified that the "final straw" that led to Plaintiff's termination involved Plaintiff's blatant disregard for Shelton's instructions regarding the December 2019 capital project.  (Dkts. 36-6 ¶ 24; 36-4 ¶ 23.)  Defendant presented evidence that Shelton discussed those instructions with Plaintiff at the December 5 meeting and specifically explained how he expected the project to be completed, the completion date, and (most importantly) that the project had to be completed entirely by the contractor and without any of Defendant's employees.  (Dkt. 36-6 ¶ 25.)  Plaintiff says he requested, but did not receive, an email following that meeting.  (Dkts. 44 ¶¶ 11, 12; 38 at 47:10–13.)  That was the basis for the Magistrate Judge's determination that Defendant failed to accommodate Plaintiff.

Defendant insists Plaintiff knew of the requirement that Reddy Ice employees not work with the contractors (including because Shelton told him that at the December 5 meeting) and never asked for clarification of those instructions by email.  Defendant says that—rather than asking for an email about Shelton's instructions for the project—Plaintiff "was upset about his supervisors' decisions" on things unrelated to Plaintiff's job responsibilities.  (Dkt. 48 at 23.)  Defendant says the things Plaintiff

asked to be put in an email were beyond his "authority to weigh in on" and had nothing to do with his termination. (*Id.*) Defendant points out that Plaintiff testified he asked for an email stating, "who decided this and what other projects you're canceling"—a decision unrelated to Plaintiff's job responsibilities. (*Id.* at 21.) Defendant argues Plaintiff's request for an email requesting this information—rather than the specific instructions for the capital project—relieved Defendant of any duty to provide project instructions via email. Put differently, Defendant says its failure to provide an email about "who decided this and what other projects you're canceling" does not constitute its failure to provide Plaintiff a reasonable accommodation necessary to do his job or that led to his termination.

That may be right. The Court acknowledges Plaintiff's admission about his request for the email. And much of what Plaintiff seemed upset about following the December 5 meeting had nothing to do with any instruction about who should perform (or not perform) the capital project. (Dkt. 38 at 167:22-174:9.) But in the context of the same meeting and the discussion of the capital project, Plaintiff testified he "never heard anything about what they wanted to do or what they didn't want to do."

(*Id.* at 48:17-19.)  He did not cabin his request to items outside his job responsibilities for the capital project.  This factual dispute is exemplified by the back and forth on the issue in Defendant's reply to Plaintiff's response to Defendant's statement of undisputed material facts.  (Dkt. 45 ¶ 24.)

As part of this argument, Defendant also says the Magistrate Judge ignored testimony by Plaintiff undercutting his claim he requested the email because of hearing problems.  (Dkt. 48 at 23.)  Defendant argues Plaintiff's own testimony shows "he heard what he was told during the December 5, 2019 meeting to the extent that the information *did* relate to his essential job functions."  (*Id.*)  Defendant—citing facts not asserted before the Magistrate Judge—points out that Plaintiff testified he understood at the December 5 meeting that the company "didn't have enough ice to do the entire shutdown but that the compressors needed to be installed and built before the end of the year" and that "they were going to get the compressors installed and built before the end of the year."  (*Id.*)  The cited testimony establishes that Plaintiff heard instructions about the timing of the project.  It does not establish that Plaintiff heard all aspects of Shelton's instructions.  Likewise, the Court

again acknowledges Plaintiff admitted understanding Ready Ice employees could not weld in the plant or perform compressor change outs. (Dkt. 38 at 162:22–24, 166:24–167:1.)   But that does not mean he understood they could not do other tasks associated with the project. After all, Defendant presented no evidence that the project included only welding and compressor work.   Defendant has not presented undisputed evidence Plaintiff knew something was forbidden despite not receiving the email and did that exact thing.

This is not a strong case and perhaps the facts are as Defendant claims.   But the evidence presented is not undisputed in this regard. Maybe Defendant will present unrebutted evidence at trial thus warranting judgment as a matter of law.   But, for now, the Court rejects Defendants contention that the Magistrate Judge erred in concluding Plaintiff raised a factual dispute over whether he asked for (and did not receive) an accommodation in the form of an email about instructions for the capital project.

## B.    Discriminatory Termination[9]

Plaintiff does not present direct evidence of discrimination but relies on circumstantial evidence.   "When a plaintiff [in ADA discrimination cases] seeks to satisfy [his] burden with circumstantial evidence, we evaluate that evidence under the familiar *McDonnell Douglas* burden-shifting framework that governs Title VII employment-discrimination claims." *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1215 (11th Cir. 2021) (citing *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1226 (11th Cir. 1999)).   Under that rubric, Plaintiff must first show a prima facie case of intentional discrimination under the ADA.   And if he does, "the burden of production shifts to [Defendant] to articulate a legitimate, nondiscriminatory reason for its actions." *Holland v. Gee*, 677 F.3d 1047, 1055 (11th Cir. 2012) (citation omitted).   If it does that, Plaintiff must then show the proffered reasons were merely pretext for discrimination. *Id.*

---

[9] Defendant objects to the Magistrate Judge's reliance on Plaintiff's unverified allegations.   (Dkt. 48 at 8.)   But there's no indication the Magistrate Judge improperly relied on Plaintiff's complaint as substantive evidence *to prove* his claims.   (Dkt. 46.)

Defendant does not argue Plaintiff failed to present a prima facie case related to his termination.  So the Court assumes he has.  *See Blackledge v. Alabama Dep't of Mental Health & Mental Retardation*, 2007 WL 3124452, at *11 n.9 (M.D. Ala. Oct. 25, 2007) (finding defendants were deemed to have conceded elements of plaintiff's prima facie case by failing to challenge the elements in their opening summary judgment brief).  Defendant, however, says the Magistrate Judge ignored evidence establishing it fired Plaintiff for insubordination rather than because of his disability.  (Dkt. 48 at 13–15.)  Defendant asserts the recommendation "fails to give due consideration" to Plaintiff's statement to Shelton that "he had been doing this for 40 years and this is how compressor work is done."  (*Id.*)  The Magistrate Judge, however, concluded Defendant had provided a legitimate reason for firing Plaintiff, citing numerous instances related to Plaintiff's attitude and behavior.  (Dkt. 46 at 54–56.)  The Magistrate Judge also specifically referenced Plaintiff's "loud" statement during the termination meeting that he had been "doing this [type of work] forever and could read [Koah] the regulation that states we don't need a certified welder on this pipe."  (*Id.* at 56; Dkt. 36-6 ¶ 37.)  The Magistrate Judge considered this evidence

but, for the reasons discussed below, concluded it was not enough to obtain summary judgment.

Defendant also argues Plaintiff failed to rebut as pretextual Defendant's proffered justifications—that is, its decision to fire Plaintiff for his poor work performance related to the capital project. (Dkt. 48 at 15–20.) To establish pretext, the plaintiff must meet the defendant's proffered reason head on—and rebut it. *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010). The plaintiff must show "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's reasons—such "that a reasonable factfinder could find them unworthy of credence." *Id.* (quotation omitted). This requires showing (1) that the reason given was false and (2) that unlawful discrimination is the true reason. *Id.* at 1267. Simply quarreling with the reason given is not enough. *See id.* In all events, the question is whether the evidence permits an inference of discrimination. *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1220–21 & n.6 (11th Cir. 2019).

Regarding pretext, Plaintiff argued that "many" of Defendant's proffered reasons arose from "facts that occurred on December 5, 2019,"

23

when Plaintiff could not hear what he was supposed to do. (Dkt. 41 at 5.) The Magistrate Judge concluded "Plaintiff has presented sufficient evidence to allow a jury to find that Defendant's purported reason for his termination was false or that it was a pretext to hide that the real reason was because of Plaintiff's disability or his need for accommodations for his disability." (Dkt. 46 at 59.) Defendant says the Magistrate Judge erred in reaching this conclusion because Plaintiff did not request the email out of confusion about his job responsibilities arising from the December 5 meeting. (Dkt. 48 at 16–17.) The Court has already explained that Plaintiff has raised a genuine issue of fact about this. Defendant also says the Magistrate Judge ignored unrebutted evidence that Plaintiff was insubordinate. (*Id.*) As the Magistrate Judge pointed out, Plaintiff attacks Defendant's justification head on by presenting evidence that he did not hear what Shelton and Forgen wanted to do and that he requested an email for the instructions Defendant contends he failed to follow as the "final straw" leading to his termination. (Dkts. 38 at 48:18–19; 36-6 ¶ 24.) Defendant cannot disavow its own explanation of the "final straw" to avoid pretext.

As part of its objections, Defendant raises a new argument, saying that—no matter what Shelton may have failed to include in an email—Plaintiff was "fully aware of Defendant's policy" to not permit its employees to perform compressor change outs but deliberately disregarded the policy when he scheduled Defendant's employees to do so. (Dkt. 48 at 10.)  So, Defendant says, Plaintiff was fired because he willfully failed to follow company policy and not because of his failure to follow instructions that Defendant allegedly failed to provide via email. (*Id.* at 8.)  Again, the Court recognizes Plaintiff testified he understood Reddy Ice employees were not allowed to perform compressor change outs. (Dkt. 38 at 162:22–24, 166:24–167:1.)  Still, Defendant's argument fails for two reasons.  First, Defendant did not make this argument before the Magistrate Judge.  At that stage of the litigation, Defendant argued generically that Plaintiff violated Shelton's instructions (not specifically about compressor changeouts or welding).  (*See* Dkts. 36-1, 43.)  Indeed, in its objections, Defendant cites testimony from Plaintiff's deposition that it did not cite to the Magistrate Judge.  (Dkt. 48 at 10.)   Defendant cannot raise a new argument now.  *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) ("a district court has discretion to decline to

consider a party's argument when that argument was not first presented to the magistrate judge").

Second, the testimony cited does not support Defendant's contention.  Defendant relies on a portion of Plaintiff's deposition in which Defendant showed Plaintiff an email that Dave Kuntz (a third-party contractor who did some or all the compressor work) sent to Shelton.  (Dkt. 48 at 10.)  In the email, Kuntz wrote: "I have talked to [Plaintiff] about the relief line, he said he would have one of his guys weld the pipe back together, that was not part of our scope." (*Id.*)  Defendant also relies on an exchange in which Plaintiff testified "I told [Kuntz] I thought that we could get one of the good forklift drivers in there, get under the pipe, pick up and move it two or three inches to get the compressor out." (*Id.*)

Defendant argues this testimony shows Plaintiff violated a rule he knew about, regardless of his conversation with Shelton.  Not true.  When asked if Kuntz's email accurately described their conversation, Plaintiff said "that's not quite the way it went."  (Dkt. 38 at 159:10.)  That alone might be enough to avoid summary judgment.  But Plaintiff then explained he was on "worker's comp leave" and not working on the day

Kuntz sent the email, that another technician on the compressor job called him with a problem about how to remove a compressor without cutting a "relief line," that he suggested maybe having a "good forklift driver" pick up the relief line to get it out of the way, but that he also told the other technician Kuntz would have to make the decision. (*Id.* at 159:12–23.) As for welding, Plaintiff testified Kuntz called him that same day to explain Kuntz's welder had left but that Kuntz still had to repair a gas line. (*Id.* at 159:24–160:4.) Plaintiff told Kuntz that Ready Ice had a certified welder in Nashville who could make a temporary repair, but Plaintiff could not make the decision. (*Id.* at 160:5–9.) Plaintiff testified, "I told [Kuntz], I said I'm not there, you're gonna have to take that up with [Shelton]." (*Id.* at 160:10–11.)

It is strange that Defendant would cite this testimony to suggest Plaintiff violated portions of the rules he admitted knowing. At best these passages show Plaintiff offered ideas, said he could not make any decision, and referred the contractor to Shelton or Kuntz. Perhaps someone violated policies to remove the compressor or repair the gas line. But if so, it seems Shelton or Kuntz would have made that decision. Whatever. Even excusing Defendant's procedural error, this testimony

does not establish some admission of knowing misconduct by Plaintiff on the capital project.

While Plaintiff's testimony establishes that he was aware of certain policies about contractor work (welding and compressor change outs), it does not establish that Plaintiff knew that the December 2019 capital project had to be completed entirely by the contractor and without any Reddy Ice employees *for all aspects of the project*. Given Defendant's broad assertion that Plaintiff was fired for failing to follow Shelton's instructions that the project had to be completed entirely by the contractor, the Court finds that Plaintiff has presented evidence from which a jury could conclude that "but for" his hearing loss and his need for an accommodation, Defendant would not have terminated his employment.[10]  Plaintiff thus has presented sufficient evidence for a jury

---

[10] Defendant says the recommendation ignores the fact that Koah and Shelton are the same individuals who decided to promote Plaintiff to the MP&V position, so there is a permissible inference that there was no discriminatory animus. (Dkt. 48 at 18.)  But, as pointed out in the case Defendant cited, "it is the province of the jury rather than the court, however, to determine whether the inference generated by 'same actor' evidence is strong enough to outweigh a plaintiff's evidence of pretext." *Williams v. Vitro Servs. Corp.*, 144 F.3d 1438, 1443 (11th Cir. 1998). Defendant also points out that Koah suffers from hearing loss.  Even so,

to find Defendant's proffered reason was a pretext and that unlawful discrimination was the true reason for Defendant's decision to fire Plaintiff.

## C.   Hostile   Work   Environment,   Retaliation,   Age Discrimination

The Magistrate Judge found Plaintiff abandoned his hostile work environment, retaliation, and age discrimination claims by failing to address them in his response brief.  (Dkt. 46 at 62–67.)  No one objects to the Magistrate Judge's conclusions, and the Court sees no plain error in them.  *See* Fed. R. Civ. P. 72(b).

## IV.   Conclusion

The Court **OVERRULES** Defendant's Objections to the Report & Recommendation (Dkt. 48), **ADOPTS** the Report and Recommendation (Dkt. 46), and **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion for Summary Judgment (Dkt. 36).  The Court **ORDERS** the parties to file their proposed consolidated pretrial order no later than April 5, 2024.  The Court may sanction the parties, including dismissing

---

other individuals were part of Plaintiff's termination, including Shelton and Price.  (Dkt. ¶ 36.)

this matter, if they fail to comply with this order.  The Court **DIRECTS** the Clerk to submit this matter after April 5, 2024, if the parties fail to file the consolidated pretrial order.

    **SO ORDERED** this 6th day of March, 2024.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE